**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Planitiff, | ) | |
| | ) | |
| v. | ) | No. 09-118-02 |
| | ) | |
| MICHAEL PEMBROKE | ) | |
| | ) | |
| Defendant, | ) | |

**DEFFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND HIS SENTENCING MEMORANDUM**

DEFENDANT, MICHAEL PEMBROKE, submits this memorandum in order to provide information and assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. 3553(a) in light of United States v. Booker 125 S.Ct. 738 (2005).

**PART 1. OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

Page 5, line21: Not all of the loan applications misrepresented the income and assets of Mr. and Mrs. Pembroke. Further some of the applications bearing defendant and Linda Pembroke's signature were signed by other individuals without their knowledge. The application for the property at 26806 Orchard, Antioch, IL was not signed by either of the Pembroke's. The same is true for the property at 104 Chapel, Twin Lakes, WI.

Page 6, line 22; Mr. Pembroke did not understand that he did not have the financial resources to



Case 2:09-cr-00118-LA Filed 08/17/11 Page 1 of 8 Document 133

qualify for the loans obtained. Many of the applications had accurate income and asset information for defendant and his wife. He did not make the purchases in a short time frame so that lenders could not reject him. Zaleski arranged all the loans. Further, the real estate market at the time afforded investors quick turnaround on their investments. He was counting on that factor. This was his intent and the evidence shows this to be true based on the work he did on all these properties.

Page 9, line33: While it is true that Zaleski divested himself of the properties and stopped paying mortgages, the defendant continued to work and rehab the properties and did not stop paying his mortgages until unable to.

Page 10, line 40: Mr. Pembroke did not cause $1,896,405.00 in false loans to be created for the purchase of nine properties. Mr. Pembroke admits to signing a false application to the charged property at 11309 S. 306th St. in Salem. He should not be responsible for the entire amount. He had no participation in many of the named properties. In others he did rehabbing and was not involved in the purchase, appraisals or loans. He concedes that he is responsible for the loan on this property. The government puts the guideline loss on this property at $24,655.00.

Page 11, line 45: Same objection.

Page 11, line 48: Defendant submits that he deserves a 4 point downward adjustment for a minimal role. Section 3B1.2 application note 4 says it is intended for defendants who are plainly among the least culpable. The defendant's lack of knowledge or

understanding of the scope and structure of the enterprise and of the activities of the others are indicative of a minimal participant. This exactly describes defendant in this scheme. His illegal activity was signing loan applications which contained false information. The applications were prepared by Zaleski. Defendant was buyer on some, not all, of the properties. Some of his applications contained accurate information. Some of the applications purporting his signature were not signed by him or his wife. During the time of the real estate boom, defendant submits, it was common practice to falsify income and other information. Not only was it common practice, but many lender institutions were encouraging applicants to do so. What else did defendant do? He used the money to rehab every property as intended. He paid all the mortgages on his properties until he was broke. The best example of the fact that he did not know the scope of the scheme and the activities of the others is the fact that Zaleski and Kay defrauded defendant regarding the Illinois properties defendant bought by transferring the titles to the Wayne Hubbard Trust for their use. (See defendant's version).

Page 12, line 54: The total offense level should be:

base 7

+ 4 for loss of $24,655.00

+ 2 for the money laundering being based on 18 USC 1956,

-4 for minor role

Equals Level 9

.

CRIMINAL HISTORY

The criminal history points are accurately figured. However, defendant submits that this overstates his true criminal history. All these cases go back to the 1990's and early 2000's. The defendant admits he had a severe drinking problem during those years and it contributed to this criminal conduct. All of the charges are misdemeanors. In 2003 defendant was told he had Hepatitis (see PSI p. 22, par. 85). This is when defendant quit drinking. Since that time he has had no arrests and done nothing but work steadily in his construction business.

**PART 2. DEFENDANT'S SENTENCING SUBMISSION**

Booker restored district courts' ability to fashion a sentence tailored to the individual circumstances of the case and the defendant by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. Under Sec. 3553(a), courts are required to sentence below the range if such a sentence would be sufficient to achieve the purposes of punishment.

As the Court is no doubt aware, since Booker, the sentencing guideline range is no longer binding on the Court, but is only one of five factors to be considered in determining the sentence. Booker at 125 S.Ct. 764-765. The other four factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparities; and (4) the need to provide restitution.

More importantly, is that the primary sentencing mandate of Section 3553 (a) is that the courts must impose the minimally-sufficient sentence to achieve the statutory purpose of punishment. "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. 3553 (a)(2)." 18 U.S.C. 3553 (a). This provision is not simply a factor; it is a cap above which any court is statutorily prohibited from sentencing, even when a greater sentence is recommended by the guidelines. U.S. v. Denardi 892 F2d 269, at 276-277 (3rd Circuit).

**TITLE 18 SEC. 3553 FACTORS**

HISTORY AND CHARACTERISTICS OF DEFENDANT

Defendant's personal history and characteristics supports a sentence of probation. Defendant has complied with all of his conditions of bond. (PSI p.1 par. 3). The defendant has agreed to fully and completely cooperate with the government in the investigation of this matter. (PSI p.2, par.12). Whatever the intentions of the co-defendants in this scheme, Mr. Pembroke made a good faith effort to rehab and resell the properties. He paid the costs of the material and labor to do so. (See defendant's version). He made his mortgage payments until he was unable to do so.

His life consists of his work. He doesn't take vacations. He works constantly to provide for his family. He has been married for 28 years to Linda Pembroke. Despite the domestic problems in the past due to defendant's drinking, Linda describes defendant as an asset to the community (PSI p. 20, par. 78). Since he has stopped drinking there have not been any problems. (PSI p. 20, par. 78). Since her return to school he has been very supportive of her.

(PSI p. 21, par. 78). Her ambitions to finish school and get and find work in the field of medical assistance depend on defendant being able to work. (PSI p. 21, par. 78). In fact she and their children will not be able to maintain their mortgage if he goes to prison.

His eldest son is a full time Army Reservist. His daughter, 24, lives at home and is a full time student and works part time. His youngest son, 20, also lives at home. He is a full time student and also an Army Reservist. (PSI p.21, par. 79).

Michael has a history of helping others, mostly through his work. (See submitted letters). He often charges far less than what his work is worth. (See submitted letters). Furthermore, his customers are loyal to him as he is to them. He travels to other parts of the country when asked by clients to do work on their homes. They give him their keys and have him serve as caretaker to their property when they are away. (See PSI p. 25, par.95 and submitted letters). His customers have become friends over the years. He is trusted and relied on by these people (See submitted letters). Please note that the submitted letters will be sent by a separate mailing to all parties.

NEED FOR THE SENTENCE IMPOSED

Defendant clearly understands the seriousness of the offense. He has pleaded guilty and he acknowledges his role in the fraud. A sentence of probation would clearly be adequate to deter criminal conduct and protect the public from further crimes. While the defendant has prior misdemeanor charges 8 years ago and longer, those were at a time when he was abusing alcohol. He no longer is. Further, the offenses he committed were not in the nature of stealing or defrauding others. That only occurred when he got involved with co-defendant Zaleski.

NEED TO AVOID UNWARRANTED DISPARITIES

Defendant submits that a sentence of probation would satisfy this prong of Sec. 3553.

Defendants Hochrek pleaded guilty to the conspiracy. He located around 15 properties and completed at least 37 appraisals that he knew were false. He received commissions and appraisal fees. His involvement was far more culpable than defendant's. Unlike defendant, Hochrek had no intention or concern about improving the properties for resale. His part was done when he created over 37 false appraisals. For his role in the conspiracy, Hochrek received 6 months prison and 6 months home confinement.

Defendant Patricia Kay was allowed to plead to a new charge of misprision of a felony and sentenced to 3 years probation. Kay was charged in the indictment as part of the conspiracy in Count 1, and with wire fraud in Counts 2, 3, 4, 5, 6, and money laundering. As originally alleged Kay was a partner with Zaleski in Northpointe Development and an investor with Zaleski. In her plea she and the government agree that she, like defendant, signed loan documents that were false. She further admits that she knew Northpointe was a shell company with no actual business function. She further admitted that while knew that the entire operation was a fraud, she concealed this fact.

One of the people Kay and Zaleski concealed information from was the defendant. More than concealing information from defendant, Kay and Zaleski defrauded him by taking title to Illinois properties defendant had bought and was rehabbing. (See Defendant's version). Kay's culpability is far greater than defendant and she received a sentence of 3 years probation.

THE NEED TO PROVIDE RESTITUTION

Aside from allowing defendant to provide for his family, placing him on probation to continue working will enable him to make the necessary restitution in this matter.

TYPES OF SENTENCES AVAILABLE

This Court has a variety sentences that can serve the purposes of both punishing defendant and, at the same time, require him to meet his obligations to his family and society. Probation or probation with home confinement would best serve both these purposes. After Booker, Courts have the discretion to impose probation, even when a defendant falls in Zone D under the guidelines. In this case, all factors, except the suggested guideline range, indicate that an alternative to prison would best serve society. By allowing Mr. Pembroke to remain working, the goal of restitution would best be served. And based upon his background, age, and character as shown by those who know him, recidivism is highly unlikely. Since 18 U.S.C. 3553(a) requires a sentence sufficient, but not greater than necessary, to comply with the purposes, a sentence of probation with a condition of home confinement and possibly some community service would be the appropriate sentence.

Respectfully submitted,

"/s" Robert Gevirtz

GEVIRTZ AND BORN
181 Waukegan Rd., Suite 306
Northfield, IL 60093
(847) 501-3388